[Civ. No. 45072. First Dist., Div. One. Oct. 31, 1980.]

REESE MARIN et al., Plaintiffs and Appellants, v.
CITY OF SAN RAFAEL, Defendant and Respondent.

COUNSEL

Peter B. Brekhus and Scott A. Williams for Plaintiffs and Appellants.

Carroll, Burdick & McDonough, Keith Hastings and John K. Stewart for Defendant and Respondent.

Opinion

**ELKINGTON, J.**—In an action against the City of San Rafael (City) seeking damages for inverse condemnation the superior court, sitting without a jury, entered judgment against plaintiffs Reese and Katherine Marin who have appealed from the judgment.

The following of the trial's evidence was substantially uncontroverted.

A hillside within the City sloping generally from east to west at one time had a small seasonal natural watercourse running downward upon it. Many years ago the City constructed, or at least accepted, Jewell Street which crossed the hillside and watercourse from north to south. Jewell Street interrupted the watercourse's flow of rain waters, apparently causing them to run somewhere down its gutters. At some later time the land on either side of Jewell Street was subdivided into building lots, and the piece of land on the street's westerly side upon which the watercourse had once run downward became known as lot 7.

Some time prior to 1942 the City caused to be installed a 12-inch drainage pipe along and under the surface of Jewell Street to a point where the pipe turned westward onto lot 7. It then continued over the lot for 12 feet where it emptied its waters upon the former watercourse. Then around 1949 the City began issuing building permits for a housing development uphill and to the northeast. This development made heavy drainage demands upon Jewell Street's 12-inch pipe so it was replaced by the City with another, 21 inches in diameter. The new drainage pipe ran into a catch basin on the street at lot 7, from which a 21-inch pipe was substituted for the existing 12-inch pipe extending onto lot 7. From that point the drainage pipe's collected rain waters continued to flow down the lot's old natural watercourse. (The owner's permission for the successive placement of the pipes on his property had not been sought by the City, nor was such placement objected to by the owner.)

About a year later lot 7's owner wished to extend the open ended 21-inch pipe downhill and beyond his lot's lower and western boundary. He contacted his cousin who was then a clerk for the City, later the City's treasurer. She told him to get in touch with Mr. Ogelsby, the City's surveyor. Mr. Ogelsby was a member, or employee, of a firm which at that time did engineering and surveying work for the City. When Jewell Street's curbs and gutters had been installed he had "sur-

veyed it and had [the contractor] come up and put the curb in." At the lot owner's request Mr. Ogelsby came out and told him "exactly what pipe to lay and how to do it"; the pipe was then laid in a ditch according to those directions. When the pipe was in place Mr. Ogelsby inspected it; according to the lot owner's testimony, he "came back and I cemented all the joints. . . and he told me to go ahead and fill it, and when I filled it I had the City street sweeper and the trucks come up and dumped dirt and I had the municipal water district come up and helped me fill it."

In 1952 a home was constructed upon lot 7 over the buried 21-inch drainage pipe, and the premises became known as 47 Jewell Street. A building permit for its construction had necessarily been-issued by the City.

Plaintiffs Reese and Katherine Marin purchased and moved into the premises of 47 Jewell Street in 1973. They had not received information "that there was any kind of a storm drain line or other type of structure under the property."

Within about 21 months, during a heavy rainstorm a large amount of water gushed up from the pipe beneath 47 Jewell Street's basement floor, causing much damage to the property. A "tremendous amount of gravel, dirt, rock," had been scoured from under the building and deposited "all over" the back yard.

Plaintiffs' request of the City to take care of the problem was met with the response that it "was a private problem [and] as far as they were concerned, the pipe didn't exist. They wanted nothing to do with it, and it was up to [us] to take care of it."

The instant action followed.

Prior to, or soon following, commencement of the action plaintiffs had in some manner placed a "concrete obstruction" in, and above the rupture of, the 21-inch pipe "in order to prevent further damage to their property." The City sought an injunction compelling plaintiffs "to remove the concrete plug from this storm drain and to restore the *storm drainage system* to a condition that is operational, . . ." (Italics added.) The injunction was ordered.

As noted, on the foregoing uncontroverted evidence the trial court concluded that there had been no inverse condemnation, and that plaintiffs were unentitled to relief.

■ The issue before us may be condensed to whether, as a matter of law, plaintiffs' property suffered physical damage proximately caused by a public improvement or public use maintained as deliberately planned and designed by the City. If the question is answered affirmatively it is of no moment whether there was another concurring cause. (*Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77 [107 Cal.Rptr. 727], *passim.*) And the City's "fault" or "negligence" if any there were, or its absence, is irrelevant. (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 302-305 [90 Cal.Rptr. 345, 475 P.2d 441].)

It is further noted that no contention is made, nor could any reasonably be made, that plaintiffs' damages were proximately caused by their own act, or fault, or negligence.

■ "'Public use' . . . is a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government." (*Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 358 [28 Cal.Rptr. 357].) ■ The construction and maintenance of storm drainage systems are matters of "public policy," and such a system created by a public entity becomes a "public improvement" and a "public use." (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 284-285 [289 P.2d 1].) "Drainage systems concern the whole community." (*Frustuck* v. *City of Fairfax, supra*, 212 Cal.App.2d, p. 362.)

■ Where a public improvement has been constructed and private property is proximately damaged in the maintenance or use of it, the fact that the work of construction was performed by a private property owner does not necessarily exonerate the public agency from liability. It is enough that the work is somehow *approved* or *accepted* by the public agency. (*Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 756-757 [185 P.2d 597] [overruled on other grounds *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 (312 P.2d 680)]; *Blau* v. *City of Los Angeles, supra*, 32 Cal.App.3d 77, 87; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 734-735 [84 Cal.Rptr. 11]; *Frustuck* v. *City of Fairfax, supra*, 212 Cal.App.2d 345, 362-363.) Such an approval or "acceptance need not be by formal action but may be implied from official acts of dominion or control over the property, . . ." (*Ackley* v. *City etc. of San Francisco* (1970) 11 Cal.App.3d 108, 113 [89 Cal.

Rptr. 480].) And: "Use of the land [for a public purpose] over a reasonable period of time constitutes an acceptance..., without any formal action in relation thereto by governmental authority...." (*McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109, 115 [21 Cal.Rptr. 263].)

Of further relevance to our problem is a footnoted illustration of *Holtz* v. *Superior Court, supra,* 3 Cal.3d 296, 311: "[17] In *Lubin* v. *Iowa City* (1964) 257 Iowa 383, 391 [131 N.W.2d 765, 770] the city's 80-year-old water main, located six feet below the ground without a reasonable inspection capability, broke and flooded the plaintiffs' basement. The court stated: 'A city...so operating knows that eventually a break will occur, water will escape and in all probability flow onto the premises of another with resulting damage.... The risk from such a method of operation should be borne by the water supplier who is in a position to spread the cost among the consumers who are in fact the true beneficiaries of this practice and of the resulting savings in inspection and maintenance costs.'"

In our opinion the evidence of the trial—particularly that relating to (1) the City's engineer who supervised and directed installation of the drainage pipe across lot 7, (2) the City's knowing and continued use of the pipe for drainage purposes over many years, and (3) the City's superior court concession that the pipe was part of its "storm drainage system"—manifested, as a matter of law, that plaintiffs' damages had proximately resulted from the City's maintenance and use of a public improvement as deliberately planned and designed by the City.

Plaintiffs were accordingly entitled to judgment for such damages as they may be found to have suffered.

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 28, 1980, and respondent's petition for a hearing by the Supreme Court was denied December 24, 1980.