[No. B214906. Second Dist., Div. Six. June 28, 2010.]

WILLIAM BOOKOUT, Plaintiff and Appellant, v.
STATE OF CALIFORNIA ex rel. DEPARTMENT OF TRANSPORTATION
et al., Defendants and Respondents.

## COUNSEL

Belsher & Becker, Belsher, Becker & Roberts, John W. Belsher and Gregory A. Connell for Plaintiff and Appellant.

Ronald W. Beals, Chief Counsel, David Gossage, Deputy Chief Counsel, Lucille Baca, Assistant Chief Counsel, Wm. David Sullivan and Derek S. Van Hoften for Defendant and Respondent Department of Transportation.

Porter Scott, Terence J. Cassidy, Thomas L. Riordan and Michael William Pott for Defendant and Respondent County of San Luis Obispo.

Daner Law Firm and Adam M. Daner for Defendant and Respondent Oceano Community Services District.

Randolph Cregger & Chalfant and Thomas A. Cregger for Defendant and Respondent Union Pacific Railroad.

## OPINION

**GILBERT, P. J.**—Plaintiff alleges damages because several defendants caused flooding on his property when it rained. We conclude, among other things, that the flooding allegedly caused by the public entities here does not constitute control or posession of the plaintiff's property. Therefore the three-year statute of limitations applies.

We also conclude that the rules of causation are the same whether applied in inverse condemnation or tort.

Plaintiff brought this action against a number of public entities and a railroad claiming defendants caused his property to flood when it rained. The complaint alleged inverse condemnation and tort causes of action. The inverse condemnation cause of action was tried to the court. After plaintiff's case, the trial court granted nonsuit based on the statute of limitations, failure to prove causation, and a determination that the railroad is not a public entity. Thereafter, defendants moved for judgment on the pleadings on the tort causes of action. The court granted the motion based on the trial court's previous finding of lack of causation and the statute of limitations. We affirm.

## FACTS

In 2000, William Bookout acquired a parcel of property in the Oceano community of San Luis Obispo County (County). He opened a nursery business on the property shortly thereafter.

The property lies at the intersection of Paso Robles and 13th Streets. Highway 1 cuts diagonally across the intersection, cutting through the southwest tip of Bookout's parcel. California's Department of Transportation (Caltrans) owns Highway 1. The Union Pacific Railroad (Railroad) owns land across from Highway 1. The Railroad's predecessor in interest, the Southern Pacific Railroad Company, acquired the land by deed from a private party in 1894. A railroad line on a raised bed was constructed on the property.

When it rains, surface water from the surrounding area drains away from Bookout's parcel into a drainage channel on the Railroad's property. A 24-inch iron pipe conducts the water under the raised railbed. In 1939 or 1940, the Railroad extended the pipe to go under a second spur added by the Railroad.

The Pismo Oceano Vegetable Exchange (Exchange) first leased, then purchased, from the Railroad the property west of the raised railbed. The iron pipe discharges onto the Exchange's parcel. Around 1977, the Exchange installed a subsurface junction box at the pipe's outfall. From the junction box, the water is diverted 90 degrees through a second 24-inch pipe to a retaining pond 200 feet away. The junction box is inadequate, causing the water to back up and flood Bookout's property.

The Oceano Community Services District (District) owns a water well. From time to time, the well discharges water into the drainage channel that leads to the culvert under the railbed. Exchange employee, Dan Sutton, testified Bookout discussed the flooding with him shortly after the nursery opened. District employee, Phillip Davis, testified Bookout complained about flooding every time it rained. Davis recalled receiving a complaint from

Bookout about flooding in December 2002. Davis's daily log for that year makes reference to a meeting with Bookout on December 20, 2002. Bookout took a picture of the pipe going into the drainage channel in the aftermath of a rain event in 2002. The picture included a District employee. Caltrans employee, Fred Brebes, testified that before he retired in 2002 he met with Bookout about damage to his property due to flooding.

In June 2002, Bookout returned a County questionnaire concerning flooding in Oceano. Bookout stated on the questionnaire that flooding, one foot deep, occurred once a year, and that the flooding damages his inventory.

On May 2, 2006, Bookout filed a complaint against Caltrans, the District, the Railroad, the County and the Exchange for inverse condemnation, nuisance, trespass and negligence. Bookout filed a first amended complaint in May 2007. He alleged the flooding ruined his nursery business.

Trial on the inverse condemnation cause of action was bifurcated from the other causes of action. Trial was before the court sitting without a jury. During trial, the Exchange entered into a good faith settlement with Bookout. Trial proceeded against the remaining defendants.

Bookout claimed he first discovered the flooding in February 2004. His expert engineer, Keith Crowe, testified that six conditions caused the flooding: (1) the pipe under the Railroad's tracks was too small for the conditions; (2) the pipe's capacity was compromised by the Exchange's poorly designed extension; (3) the District's well added silt and debris; (4) the County, Caltrans and the District allowed or caused upstream watershed conditions to worsen; (5) all remaining defendants contributed to a decrease in storage volume at the pipe's inlet; and (6) a lack of maintenance by all defendants.

After Bookout completed the presentation of his case, defendants moved for judgment of nonsuit pursuant to Code of Civil Procedure section 631.8.[1] The trial court granted the motion.

The trial court determined that the applicable statute of limitations is three years, pursuant to section 338, subdivision (j). The court found Bookout's cause of action for inverse condemnation accrued sometime prior to the middle of 2002. Thus the cause of action is barred by the statute of limitations. The court also found Bookout failed to carry his burden of proof that acts or omissions by the District, the County or Caltrans were the cause of the flooding. The court found that the Railroad may have been negligent by failing to enlarge the culvert or requiring that its tenant do so. But the court also found that the Railroad is not a public entity subject to an action for inverse condemnation.

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

After the trial court granted nonsuit on the inverse condemnation cause of action, defendants moved for judgment on the pleadings for the remaining causes of action. The motion was based on collateral estoppel. A different trial court granted the motion.

The trial court relied on the finding in the first phase that Bookout failed to prove causation as to the County, the District and Caltrans. Although the court in the first phase stated the Railroad may have been negligent, the court in the second phase determined that all remaining causes of action against the Railroad were barred by limitations.

## DISCUSSION

### I

*First Phase: Inverse Condemnation*

(a)

Bookout contends the trial court applied the wrong statute of limitations.

■ The trial court applied section 338, subdivision (j), which provides a three-year limitation on "[a]n action to recover for physical damage to private property under Section 19 of Article I of the California Constitution." Section 19 of article I requires just compensation where private property is "taken or damaged" by a public entity. (Cal. Const., art. I, § 19, subd. (a).)

Bookout argues the trial court should have applied the five-year statute of limitations applicable to actions for adverse possession. (See §§ 318, 319.)

■ If the property is damaged, the three-year statute of limitations applies; if the property is taken, the five-year limitation on actions to recover property applies. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 605, p. 786; *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 607 [11 Cal.Rptr.2d 824].)

Thus, in *Lyles v. State of California* (2007) 153 Cal.App.4th 281, 285 [62 Cal.Rptr.3d 696], the court applied the three-year statute to allegations that the plaintiff's property was damaged by a flood caused when a state-owned culvert became blocked. In *Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 855 [132 Cal.Rptr.2d 444] (*Lee*), the court and parties agreed that the three-year statute applied to

allegations that the plaintiff's property was damaged by the construction of a subway under a neighboring street.

In contrast, courts have applied the five-year statute where a public entity has physically entered and exercised dominion and control over some portion of a plaintiff's property. Thus, in *Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345 [28 Cal.Rptr. 357], the city entered the plaintiff's property, widened a drainage ditch that ran the length of the property and constructed a berm. In *Ocean Shore R.R. Co. v. City of Santa Cruz* (1961) 198 Cal.App.2d 267, 272 [17 Cal.Rptr. 892], the city constructed a road over the plaintiff's property. In *Garden Water Corp. v. Fambrough* (1966) 245 Cal.App.2d 324, 328 [53 Cal.Rptr. 862], a public entity took possession of the plaintiff's water system, supplied water to some 90 residences, maintained the system and retained all income.

█ Here, unlike cases applying the five-year statute, no public entity physically entered Bookout's land or maintained possession and control over any portion of it. The trial court correctly concluded the three-year statute applies.

Bookout argues that even if the three-year statute applies, the trial court failed to use the "date of stabilization" to determine when the cause of action accrued.

In *Pierpont Inn, Inc. v. State of California* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737], disapproved on another ground in *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694 [66 Cal.Rptr.2d 630, 941 P.2d 809], the state constructed a freeway over land owned by Pierpont. Pierpont brought an action for condemnation and damages. The state demurred on the ground that Pierpont failed to file a claim under the government claims within two years of the accrual of the cause of action. The court held the claim was timely. Pierpont reasonably awaited the completion of the project to determine more accurately the exact extent to which its remaining property would be damaged. (*Pierpont Inn, Inc.* at p. 293.) Courts have subsequently cited *Pierpont* for the proposition that where there is continuous and repeated damage, incident to a public improvement, the limitations period does not begin to run until the situation has stabilized. (See *Lee, supra,* 107 Cal.App.4th at p. 857.)

█ The determination of when the statute of limitations begins to run is a question of fact. (*Lee, supra,* 107 Cal.App.4th at p. 857.) Here the trial court determined that the date of stabilization theory does not apply. The court found that the last improvements to the drainage system were constructed by

the Exchange in the late 1970's, and that the flooding problem was relatively consistent and static for several years prior to the time Bookout purchased his property in 2000.

Bookout challenges the trial court's findings by listing what it characterizes as changed conditions since the Exchange constructed the junction box in the 1970's. The alleged changed conditions include maintenance activities, modifications to well No. 8, weed abatement, removal of a retaining wall, alteration of Highway 1, shoveling and grading of debris, accumulation of debris, and an increase in impervious surfaces. But none of these alleged changes of conditions compelled the trial court to conclude that the flowing was not relatively consistent and static for several years prior to Bookout's purchase of his property.

Bookout argues the trial court erred in receiving documentary evidence that was not produced during discovery. The document is a county drainage study questionnaire returned by Bookout in July 2002. Bookout stated on the questionnaire that the area floods one foot or more once a year and that the flooding has damaged his inventory.

The County explained that it was unaware of the document at the time of discovery. It said that the questionnaire responses were summarized for inclusion in a drainage study, but they were not filed by name, address or location. The Railroad's counsel happened to find Bookout's response during Crowe's testimony. The County pointed out that Bookout must have been aware of the document because he submitted it to the County. The trial court found the failure to produce the document was not in bad faith, and refused to impose discovery sanctions.

Bookout cites *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1455 [59 Cal.Rptr.2d 919], for the proposition that the trial court has the power to exclude documents that a party has failed to produce in response to discovery requests. But in *Pate,* the trial court found that the party who failed to produce the requested documents had " 'played fast' " with the discovery rules. (*Id.* at p. 1453.) The trial court found no such bad faith here. Discovery sanctions are reviewed for an abuse of discretion. (*Id.* at p. 1454.) The trial court did not abuse its discretion.

In any event, even without the challenged document, the trial court's finding that Bookout knew about the flooding in 2002 is supported by overwhelming evidence. Sutton, Davis and Brebes testified Bookout complained to them about flooding in 2002. Bookout even admitted he took a picture of the drainage pipe in the aftermath of flooding in 2002. Bookout has failed to carry his burden of showing he would have obtained a more

favorable result had the challenged document been excluded. (See *Thomas v. Lusk* (1994) 27 Cal.App.4th 1709, 1720 [34 Cal.Rptr.2d 265].)

(b)

 Even if the trial court erred in applying the statute of limitations, the trial court found that Bookout failed to carry his burden of proof as to causation in his action against the District, the County and Caltrans. The plaintiff has the burden of proving a substantial causal relationship between the defendant's act or omission and the injury. (*California State Automobile Assn. v. City of Palo Alto* (2006) 138 Cal.App.4th 474, 481 [41 Cal.Rptr.3d 503].) To carry that burden the plaintiff must exclude the probability that other forces alone produced the injury. (*Ibid.*)

Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof. (See *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399]; *Kunzler v. Karde* (1980) 109 Cal.App.3d 683, 688 [167 Cal.Rptr. 425] [judgment appealed from is presumed correct].) We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence. (*Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1427 [238 Cal.Rptr. 160].)

Bookout points to no findings of fact in his favor. Instead, he relies on over 500 photographs and videos showing the flooding, several hundred documents which he claims show each defendant exercised dominion and control over the drainage facilities, and the testimony of his expert engineer, Keith Crowe. He believes the evidence against defendants was overwhelming.

Bookout claims the evidence is credible because it is uncontradicted. He cites *Joseph v. Drew* (1950) 36 Cal.2d 575, 579 [225 P.2d 504], for the proposition that uncontradicted testimony of a witness may not be disregarded, but should be accepted as proof of the fact to which the witness testified. Indeed, there are no doubt cases where the uncontradicted testimony of a witness is so credible that no reasonable trier of fact could reject it. But this is not such a case.

 Here there is an obvious cause of the flooding. The Exchange modified the drainage by constructing a junction box and pipeline that redirected the flow of water by 90 degrees. The Exchange has settled with

Bookout. Evidence that the remaining defendants contributed to the conditions that caused the flooding rests largely in Crowe's expert testimony. As helpful as expert opinion can be, such testimony carries a built-in bias: experts are most often very well paid for their opinions. The trial court had good reason to be skeptical of Crowe's testimony. We apply the usual rule on appeal that the trier of fact is not required to believe the testimony of any witness, even if uncontradicted. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 [213 Cal.Rptr. 69].) The evidence presented here did not compel the trial court to find in favor of Bookout.

Bookout argues the County may be liable even if it did not cause the flooding. He cites *Marin v. City of San Rafael* (1980) 111 Cal.App.3d 591 [168 Cal.Rptr. 750], for the proposition that a governmental entity may be liable if it approves a work of improvement. There the city constructed a drainage pipe that extended onto a lot owned by the plaintiffs' predecessor. The lot owner obtained a permit to extend the pipe beyond his lot. The city's engineer told him exactly what pipe to lay and how to do it. Later a home was constructed on the buried drainage pipe. The plaintiffs purchased the home without knowledge of the pipe's existence. A few months later the pipe burst during a heavy rain, damaging the plaintiffs' property. The plaintiffs placed a concrete obstruction in the pipe to prevent further damage. The city obtained an injunction requiring the plaintiffs to remove the obstruction and restore the pipe to an operational condition. The trial court found the city was not liable.

The Court of Appeal reversed. The court stated the city was liable because (1) its engineer supervised and directed installation of the pipe, (2) the city used the pipe for drainage over many years, and (3) the city conceded the pipe was part of its storm drainage system. (*Marin v. City of San Rafael, supra,* 111 Cal.App.3d at p. 596.) In other words, the city was liable because it directed the installation of, used, and owned the pipe. It even obtained an injunction to prevent the plaintiffs from interfering with its operation. None of those factors are present here.

(c)

Bookout contends the trial court improperly applied a reasonableness test to determine liability. He points out that except for damage caused by public flood control projects, the test in inverse condemnation actions is strict liability. (Citing *Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722, 753–754 [122 Cal.Rptr.2d 38].)

But Bookout fails to point to anywhere in the record that the trial court applied the reasonableness test instead of strict liability. In any event, the

court's ruling was based on the statute of limitations and failure to prove causation. The results are the same under the reasonableness test or strict liability. Defendants prevail.

## II

*Second Phase: Judgment on the Pleadings*

### (a)

A judgment on the pleadings is similar to a general demurrer. (See 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 187, p. 625.) The factual allegations of the complaint are accepted as true. (*Ibid.*) The court, however, may grant judgment on the basis of extrinsic matters of which it may take judicial notice. (*Ibid.*) Bookout does not contest that the trial court may take judicial notice of the court's decision in the first phase of the trial.

The trial court in the first phase found Bookout failed to prove the County, the District or Caltrans caused harm to Bookout. Bookout argues the standard of causation for inverse condemnation is different from tort causation. He cites CACI No. 431 on multiple causes.[2] He claims, without citation to authority, that the standard of proof for causation stated in CACI No. 431 differs from causation for inverse condemnation. He fails to specify how it differs. In fact, if the defendant did not cause harm, there is no causation no matter what the cause of action. The trial court properly granted judgment on the pleadings to the County, the District and Caltrans.

### (b)

The trial court in the second phase did not grant the Railroad judgment on the pleadings based on failure to prove causation. That is because the trial court in the first phase stated, "[A]t most, the Railroad negligently acted by omission by failing to enlarge a culvert or by failing to require (if that was possible) that its tenant do so." Instead, the trial court in the second phase granted the Railroad judgment on the pleadings based on the statute of limitations.

---

[2] CACI No. 431 states: "A person's negligence may combine with another factor to cause harm. If you find that [defendant's] negligence was a substantial factor in causing [plaintiff's] harm, then [defendant] is responsible for the harm. [Defendant] cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing [plaintiff's] harm."

Bookout argues the trial court in the second phase erred in basing its judgment on the three-year statute of limitations. (§ 338, subd. (b).) Instead, Bookout contends the flooding constitutes a continuous trespass or nuisance and a new cause of action arises each time it floods.

■ The cases distinguish between permanent and continuous nuisance or trespass. Where a nuisance is of such a character that it will presumably continue indefinitely, it is considered permanent and the limitations period runs from the time the nuisance is created. (*Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, 107 [162 P.2d 625].) Where, however, a nuisance may be discontinued at any time, it is considered continuing in character. (*Ibid.*) A person injured by a continuous nuisance may bring successive actions, even though an action based on the original wrong may be barred. (*Id.* at pp. 107–108.) The same rules apply whether the wrong is characterized as nuisance or trespass. (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1148 [281 Cal.Rptr. 827].)

■ In *Phillips*, the alleged nuisance was a locked gate. The court determined that the nuisance could be characterized as continuous because it could be removed at any time. (*Phillips v. City of Pasadena, supra*, 27 Cal.2d at p. 108.) Here the Railroad purchased its property in 1894. The raised railbed and culvert pipe have been in place at least since 1940 and most probably for over 100 years. Unlike a locked gate, there is nothing to suggest the pipe is temporary or might be modified at any time. Our Supreme Court has stated, "The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land . . . ." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 869 [218 Cal.Rptr. 293, 705 P.2d 866].) The solid structure here is no less permanent because it is built on a defendant's land.

■ Bookout cites *Mangini* for the proposition that a nuisance is continuous if the damage is continuous. Bookout's reliance on *Mangini* is misplaced. There the plaintiffs alleged the defendant created a nuisance by polluting their land with hazardous waste. The defendant demurred on the ground that the complaint was filed beyond the three-year limitation. The trial court sustained the demurrer. In reversing, the Court of Appeal recognized the test for continuous nuisance is that the nuisance may be discontinued at any time. (*Mangini v. Aerojet-General Corp., supra*, 230 Cal.App.3d at p. 1143.) The court stated that the allegations of the complaint met "the crucial test of a continuing nuisance: that the offensive condition is abatable." (*Id.* at p. 1147.) Because the defendant's alleged conduct ended years prior to the filing of the complaint, the court went on to say, "We note plaintiffs' land may be subject to a continuing nuisance even though defendant's offensive conduct ended

years ago. That is because the 'continuing' nature of the nuisance refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur." (*Ibid.*)

Unlike the instant case, *Mangini* did not involve a solid structure. It involved abatable pollution. The court did not mean to suggest a nuisance is continuous simply because the damage produced by the nuisance is continuous. A solid structure that encroaches on a plaintiff's land produces continuous damage. Yet, our Supreme Court described such a nuisance as "unquestionably permanent." (*Baker v. Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 869.) All *Mangini* was trying to say is that a nuisance can still be continuous even after the offensive conduct has ended.

The nuisance or trespass alleged here is permanent. The three-year statute of limitations bars Bookout's causes of action for nuisance and trespass.

The judgment is affirmed. Costs are awarded to respondents.

Yegan, J., and Perren, J., concurred.

On July 28, 2010, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 27, 2010, S185267. Corrigan, J., did not participate therein.