Filed 6/27/23  Gonzalez v. Boardriders Wholesale CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MIGUEL GONZALEZ,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BOARDRIDERS WHOLESALE, LLC et al.,<br><br>    Defendants and Appellants. | G061512<br><br>(Super. Ct. No. 30-2022-01240829)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Lon F. Hurwitz, Judge.  Affirmed.

Epstein Becker & Green, Michael S. Kun and Kevin D. Sullivan, for Defendants and Appellants.

Diefer Law Group, Omri A. Ben-Ari, and Melissa Newman Avila, for Plaintiff and Respondent.

\*            \*            \*

After Miguel Gonzalez filed a complaint against his former employer Boardriders Wholesale, LLC (Boardriders) and former supervisor, Emily Alvarez (collectively "Appellants"), they filed a motion to compel arbitration pursuant to an arbitration agreement that Gonzalez purportedly signed electronically. Gonzalez denied signing the arbitration agreement. The trial court denied the motion to compel arbitration, finding that appellants failed to establish Gonzalez signed the electronic document and thus failed to satisfy their burden of proof to prove the existence of a valid arbitration agreement. Appellants contend the court's finding was erroneous on multiple grounds. As discussed below, we conclude appellants failed to show the undisputed evidence compels reversal. Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Motion to Compel Arbitration*

On January 14, 2022, Gonzalez filed a complaint alleging various claims against appellants and demanded a jury trial. The complaint did not reference any arbitration agreement. Appellants filed their answers, asserting numerous affirmative defenses, including that the claims were barred because Gonzalez was "required to arbitrate his claims pursuant to a valid and enforceable arbitration agreement."

On May 3, 2022, appellants filed their motion to compel arbitration and stay the action (Arbitration Motion). In the motion, appellants alleged that Gonzalez electronically signed an arbitration agreement when he began his employment with Boardriders. The agreement, attached as an exhibit, covered the claims at issue. Appellants further alleged the attached declaration of Brian Bustillos would demonstrate that "only [Gonzalez] could have taken the actions to complete his new hire paperwork, including the Arbitration Agreement."

2

In his declaration, Bustillos stated that he is a Senior Director, Human Resources Business Manager for Boardriders. He reviewed Gonzalez's personal records, and "[b]ased on information available to me, [Gonzalez] completed his new hire paperwork through SignNow on September 20, 2020, including an Employee Personal Information form, a Direct Deposit form, a W-4 form, a Withholding Allowance Certificate, an I-9 form, and a Voluntary Meal Period Waiver." SignNow is a company that delivers new-hire forms electronically to a personal e-mail address provided by new hires. Gonzalez also electronically signed a Mutual Agreement to Arbitrate on September 29, 2020. Bustillos further stated: "The use of security procedures in the new hire process, including but not limited to, the highly factual and detailed personal and biographical information collected during the process and the numerous other documents completed by [Gonzalez] during the process, lead me to conclude that only [Gonzalez] could have taken the actions to complete the new hire paperwork on September 20, 2020. Consequently, I conclude that the electronic signature on the Mutual Agreement to Arbitrate was the result of [Gonzalez]'s actions on September 20, 2020."

B. *Opposition to Arbitration Motion*

On April 19, 2022, Gonzalez filed his opposition to the Arbitration Motion, arguing appellants failed to meet their burden of proving the existence of an agreement to arbitrate. He noted that appellants "**failed** to provide evidence of an IP address, a unique username and password, an email address where the agreement was supposedly sent, or any details about how only Plaintiff could have logged in to sign. Moreover, the information that [appellants] did provide was contradictory; on [the] one hand, [they] state[d] that the signature [on the arbitration agreement] was the acts of events from September 20, 2020, and on the other they claim it must have been signed September 29, 2020." (Bold in original.)

3

Gonzalez also objected to the entirety of the Bustillos declaration as lacking foundation. Specifically, Gonzalez argued that Bustillos: (1) lacked the requisite personal knowledge of the events that occurred on September 20, 2020; (2) did not establish he was a qualified Custodian of Records for the SignNow documents; and (3) that he witnessed the execution of the arbitration agreement.

In a supporting declaration, Gonzalez denied signing, electronically or physically, an arbitration agreement with Boardriders. He stated he never created an "electronic signature" that Boardriders could use. He further stated he never met Bustillos and never heard of SignNow. He also never met David Tanner, who purportedly signed the arbitration agreement on behalf of Boardriders. Finally, Gonzalez stated his belief that Boardriders forged his signature on the arbitration agreement based on another instance of alleged forgery of a disciplinary report.

C. *Reply*

In reply, appellants asserted that Gonzalez committed perjury when he denied electronically signing the arbitration agreement because the forgery allegation was credible only if appellants "hacked his personal email account and somehow obtained his personal information to forge his pre-employment documents." After acknowledging that the Bustillos declaration mistakenly referenced a "September 20, 2020" date, when all the new-hire paperwork, including the arbitration agreement, was sent to Gonzalez's personal email address and signed on "September 29, 2020," appellants argued that it was not credible that Boardriders knew his personal e-mail address and sensitive personal information, and engaged in "criminal conduct just to create an arbitration agreement with him." (Bold and italics omitted.)

Appellants also requested that the trial court conduct an evidentiary hearing if it were inclined to give any weight to Gonzalez's contention that his electronic signature on the arbitration agreement was forged. Appellants proposed that at the evidentiary hearing, Gonzalez would be questioned on "how he signed his pre-

4

employment paperwork, all of which contains [*sic*] the same electronic signature -- and how he contends [appellants] obtained personal information about his Social Security number, his home address, his cellphone number, his email address, his date of birth, his high school, his previous employer, his sister's name, and contact information, and his bank account number to forge all of those documents."

Bustillos filed a notice of errata in which he stated there was a typographical error in his prior declaration: the date Gonzalez completed his new hire paperwork was erroneously typed as "September 20, 2020" instead of "September 29, 2020."

Bustillos also filed a supplemental declaration in which he stated that "[b]ased on the information available to me, in addition to his arbitration agreement, [Gonzalez] also completed and electronically signed" several other documents on September 29, 2020, which contained confidential information, such as his Social Security number, date of birth, high school, contact information for his sister, banking information, and personal e-mail address. Bustillos also stated that SignNow permits Boardriders to access information about when and how its employees accessed and completed their pre-employment paperwork. "On April 25, 2022, Boardriders' human resources department accessed the SignNow platform and printed out the information showing when and how [Gonzalez] accessed and completed his pre-employment paperwork. According to that printout, [attached to the declaration as Exhibit 16], [Gonzalez] completed his pre-employment documents on September 29, 2020 using a computer with the IP address [##.###.##.140] through the email [ *.*.gmail.com]."

Gonzalez objected to the supplemental declaration as lacking foundation and to the attachments for lack of authentication and foundation as business records (Evid. Code, § 1271). The trial court sustained the objection to Bustillos's statement that Gonzalez "'signed a Mutual Agreement to Arbitrate on September 29, 2020,'" and to

5

Exhibits 1 through 15 to the supplemental declaration, but overruled the remaining evidentiary objections.

E. *Order Denying Arbitration Motion*

The trial court denied the Arbitration Motion, finding that appellants "have failed to submit any competent evidence establishing that the electronic signature on the arbitration agreement was placed there by plaintiff, and have therefore failed to meet their burden to demonstrate the existence of an arbitration agreement by a preponderance of the evidence." As the trial court explained, "the mere fact that defendants sent the SignNow link to an email address provided by plaintiff does not show that only plaintiff could have accessed the email, the SignNow link, or the documents available through that link; or, most importantly, that only plaintiff could have signed those documents. Email accounts can be shared, emails are routinely forwarded, website/portal links can be clicked by virtually anyone, and absolutely nothing shows that there were any security precautions of any kind in place to verify the signing party's identity on these documents."

The court also determined that appellants failed to explain the basis for their assumption that no one other than Gonzalez had access to certain sensitive personal information or that Gonzalez signed all of the documents, including the "voluntary" arbitration agreement. Finally, the court concluded that Bustillos failed to set forth any facts establishing his personal knowledge or the foundation necessary to attest to the truth of the fact that "all of the [new hire] documents were signed at the same time, much less by plaintiff."

II

DISCUSSION

A. A*pplicable Law*

Code of Civil Procedure section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging

6

the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists." On a motion to compel arbitration, the threshold question is whether there is an agreement to arbitrate the dispute. (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120 (*Trinity*).) The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) To meet this burden, the moving party must first produce "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal*, 14 Cal.App.4th at p. 413; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).) "'If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa*, 72 Cal.App.5th at p. 165.) "If the opposing party produces such evidence, then 'the moving party must establish with admissible evidence a valid arbitration agreement between the parties.'" (*Trinity*, 78 Cal.App.5th at p. 1120.) "Despite the shifting burden of production, '[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party.'" (*Ibid.*)

"Where the trial court's ruling is based on a finding of fact, we review the decision for substantial evidence. [Citations.] Under this deferential standard, "'[a]ll factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment."' [Citations.]" (*Trinity*, *supra*, 78 Cal.App.5th at p. 1121.) "However, '[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law.' [Citations.]" (*Ibid.*) "'Specifically, the question becomes whether the appellant's

7

evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.""" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *Trinity*, *supra*, 78 Cal.App.5th at p. 1121.) "Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for [the party] to prevail on appeal by arguing the evidence compels a judgment in [the party's] favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

B. *Appellants Have Not Demonstrated Trial Court's Factual Finding Was Erroneous As a Matter of Law*

Here, appellants made a prima facie case for the existence of a valid arbitration agreement by attaching the purported arbitration agreement to its Arbitration Motion. (See *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, *(Bannister)* ["The party seeking arbitration can meet its initial burden by attaching to the [motion or] petition a copy of the arbitration agreement purporting to bear the [opposing party's] signature."].) However, Gonzalez disputed the authenticity of the arbitration agreement by stating in a sworn declaration that he never signed, physically or electronically, the agreement. (See *Gamboa*, *supra*, 72 Cal.App.5th at p. 165 [opposing party can meet its burden to dispute arbitration agreement by "testify[ing] under oath or declar[ing] under penalty of perjury that the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement."].) "Once [Gonzalez] challenged the validity of [his]signature [on the arbitration agreement] in his opposition, [appellants] were then required to establish by a

8

preponderance of the evidence that the signature was authentic." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).)

"[T]he burden of authenticating an electronic signature is not great." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844 (*Ruiz*).) "An . . . electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a).) "For example, a party may establish that the electronic signature was 'the act of the person' by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." (*Bannister*, *supra*, 64 Cal.App.5th at p. 545, citing *Espejo*, *supra*, 246 Cal.App.4th at p. 1062.)

Here, appellants sought to establish that the electronic signature on the arbitration agreement was Gonzalez's through the initial and supplemental declarations of Bustillos. In those declarations, Bustillos opined that Gonzalez electronically signed the arbitration agreement because other documents were electronically signed with the same signature on the same date via SignNow, and those other documents required Gonzalez's confidential personal information. Bustillos testified that to electronically sign the documents, a person must access the documents via a SignNow link sent to an email address provided by that person.

In his supplemental declaration, Bustillos states that the documents were signed via a device with a specific IP address and that the SignNow link was sent to a specific email address. The IP address and email address were supposedly on a SignNow document that Boardriders HR department accessed and printed out on April 25, 2022. Bustillos, however, did not state he personally accessed, viewed or printed out the

document. The printout purportedly was attached as Exhibit 16 to Bustillos's Supplemental Declaration, but Exhibit 16 in the record on appeal does not show the IP address or email address.

On the record above, we conclude appellants have not met their burden to demonstrate that the trial court's finding they failed to prove Gonzalez signed the arbitration was erroneous as a matter of law. Bustillos never testified he personally witnessed Gonzalez sign the agreement. He did not testify about the process, if any, that Boardriders or SignNow uses to verify that the same person signed all the documents and all in the same time period. Indeed, the undisputed evidence was that Gonzalez was not assigned a unique login and password to access the SignNow link. Nor is there any admissible evidence in the record that all the new-hire documents were signed within a short period of time from the same computer, such as timestamps. Finally, there were no security measures to ascertain that an email link was not forwarded or accessed by someone other than Gonzalez. In sum, the declarations of Bustillos do not explain how the electronic signature could have only been placed on the Arbitration Agreement by Gonzalez. Accordingly, appellants have not met their appellate burden to show that the Bustillos declarations compel reversal.

Appellants' reliance on *Anderson v. Safe Streets USA LLC* (E.D. Cal., Aug. 29, 2018) 2018 WL 4106135 (*Anderson*), *Gonzalez v. Ceva Logistics U.S., Inc*. (N.D. Cal., Oct. 31, 2016) 2016 WL 6427866 (*Gonzalez*), and *Tagliabue v. J.C. Penney Corporation, Inc*. (E.D. Cal., Dec. 15, 2015) 2015 WL 8780577 (*Tagliabue*), is misplaced, as those federal district court cases are factually distinguishable. In *Andersen*, the "electronic signature appears on the documents [, including the arbitration agreement] next to a date and time stamp" and "all of the hiring forms were submitted within fifteen minutes of each other, between 12:29 p.m. and 12:45 p.m. on August 19." (*Id*., 2018 WL 4106135, at *1 & *4.) There are no time stamps on the new-hire documents here. In *Gonzalez*, the online application, which contained the arbitration

10

agreement, was "electronically date and time stamped" and Gonzalez "failed in response to allege that she did not sign the agreement or otherwise call into question the authenticity of the signature." (*Id.*, 2016 WL 6427866, at \*3–\*4.)  In contrast here, Gonzalez has alleged he did not sign the agreement.  Finally, in *Tagliabue*, in order to access to the arbitration agreement, "the employee is required to enter his security number and password," which are a "unique employee identification number and . . . a password [he created] when he was hired." (*Id.*, 2015 WL 8780577, at \*3.)  As discussed above, no unique login or password was required to access the arbitration agreement here.

C.  *Appellants' Remaining Claims*

We also reject appellants' other challenges to the trial court's order denying the Arbitration Motion.

Appellants argue the trial court abused its discretion in failing to rule on their request for an evidentiary hearing on Gonzalez's allegations that they forged his signature on the arbitration agreement. (See *Rosenthal*, *supra*, 14 Cal.4th at p. 414 ["[W]here—as is common with allegations of fraud such as are made here--the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination"].) The court's ruling, however, was not dependent on Gonzalez's forgery allegation. Although the court referenced Gonzalez's forgery allegation when it summarized the opposition, it never ruled on the forgery allegation nor used the forgery allegation to support its finding that appellants failed to meet their burden to show Gonzalez signed the document. Stated differently, even if appellants had not forged the signature, that fact does not compel reversal of the court's finding that appellants did not satisfy their burden to prove the existence of a valid arbitration agreement. Any error in failing to rule on the request for an evidentiary hearing on the forgery allegation was thus harmless.

11

Appellants also argue the trial court applied a burden of proof other than beyond a preponderance of the evidence. We disagree. In its ruling, the court stated the proper standard of proof -- "preponderance of the evidence." Appellants further assert that "[r]equiring an employer to prove that an applicant did not have a shared e-mail account, that an applicant did not forward an onboarding email to someone else, or that no one else in the world could have accessed the applicant's email account is a standard much higher than 'preponderance of evidence.'" They cite no case law for this proposition, and it is not self-evident. In any event, the trial court did not require appellants to prove those facts, but merely explained why in the absence of security measures verifying an applicant's identity, such as a unique login and password, those facts would satisfy the trial court that appellants had met their burden of proof.

Finally, appellants argue the trial court abused its discretion in sustaining Gonzalez's evidentiary objections to Exhibits 1 through 15 in Bustillos's supplemental declaration. Exhibits 1 through 15 are the new-hire documents Gonzalez purportedly signed on September 29, 2020, which included the arbitration agreement, an Employee Personal Information form, and the W-4 form. Any error is harmless. The documents are duplicative of Bustillos's statements in his initial declaration listing the new-hire documents. More important, the excluded exhibits do not affect the court's factual determinations, given that the court explicitly addressed whether sensitive information in "a W-4 form or emergency contact form" established it was Gonzalez who signed the documents. Additionally, we have conditionally reviewed those documents and they do not change our conclusion that appellants have not shown the trial court's finding that they failed to meet their burden of proof was erroneous as a matter of law.

## III

### DISPOSITION

The order of the trial court denying the motion to compel arbitration is affirmed.  Gonzalez may recover his costs on appeal.


DELANEY, J.

WE CONCUR:


SANCHEZ, Acting P. J.


MOTOIKE, J.