Filed 7/7/21  Johnson v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MICHAEL JOHNSON et al., | C088920 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0037100) |
| v. | |
| JONATHAN WILLIAMS, | |
| Defendant and Respondent. | |

Plaintiffs Michael Johnson and Amae El'shloyh brought this negligence action seeking compensatory damages against a driver, Jonathan Williams, who rear-ended their vehicle at a low speed.  After trial, the jury returned a verdict that defendant's negligence was not a substantial factor in causing harm to either plaintiff.  On appeal, plaintiffs argue substantial evidence does not support the jury's verdict and the trial court abused its discretion in denying their motion for a new trial.  These claims fail because plaintiffs had the burden of proof and the evidence did not compel a finding in their favor as a matter of law.  El'shloyh further argues the trial court abused its discretion in allowing defendant's counsel to question her about a bioweapon experiment.  To the extent she has

1

preserved the issue for appeal, she has failed to establish any error.  We will affirm the judgment.

## I.  BACKGROUND

A.      *The Accident*

On December 26, 2013, Johnson left the office of his chiropractor, Dr. Geiger, and was stopped at an intersection with El'shloyh in his passenger seat when they were rear-ended by defendant.  The jury was told that, if he had testified, defendant would have indicated that his best estimate of his speed was 10 to 15 miles per hour at the time he struck Johnson's car.

The defense expert on accident reconstruction and biomechanics testified that the impact speed of defendant's car was five to nine miles per hour.  Johnson never made any repairs to his car as a result of the accident.

Both plaintiffs were wearing seatbelts at the time of the collision, and the airbags did not deploy.  El'shloyh called 911, and plaintiffs were taken to the emergency room. CT scans were taken of each plaintiff's brain and cervical spine before they were released.  El'shloyh's scans were normal, and Johnson's showed no change from prior scans.

B.      *Evidence of Prior Injuries*

To understand plaintiffs' claim that the accident was a substantial factor in causing them harm, we must first summarize the evidence pertaining to their prior injuries.

1.      *Johnson*

Johnson had been involved in several previous traffic accidents.  After an accident in 1995, he had numbness in his arms.

In 2002 or 2003, Johnson was attacked by his roommate.  After this incident, Johnson had neck pain, body stiffness, and numbness and tingling in the legs.  He was diagnosed with degenerative spine disease and a possible spinal cord injury.

2

In 2008, Johnson was riding a bicycle when he was struck by a car. He lost consciousness for several minutes and was later diagnosed with a traumatic brain injury. He suffered headaches and had pain in his neck, back, arms, and legs. He also complained of numbness in his lower extremities. Johnson began seeing Dr. Geiger after this accident.

In December 2012, Johnson was rear-ended at a stop sign by a vehicle traveling over 30 miles per hour. After that accident, Johnson had pain in his head, neck, low back, arms, legs, and fingers, as well as numbness in his low back and hip. Dr. Geiger concluded Johnson would have permanent pain in his neck and back as a result of the 2012 accident.[1] During his visit to Dr. Geiger just before the December 26, 2013 accident, Johnson complained of neck and back pain, and tingling in his legs. An MRI was taken of his lumbar and cervical spine.

### 2. El'shloyh

When El'shloyh was six years old, she was hung from a tree, which scarred her neck and damaged her trachea such that she was unable to speak for two years. In 1994, she suffered a facial fracture in a car accident. In 1997, she fractured her spine in a fall. In 1998, her skull was fractured when she was assaulted. Dr. Geiger first treated El'shloyh in 2009. At that time, she complained of neck pain, right shoulder pain, low back pain, and hip pain.

### C. Post-Accident

### 1. Johnson

Johnson testified that after his most recent car accident, he had trouble sleeping, and his arms and legs were numb. Additionally, his neck pain, back pain, joint pain, head pain, and soreness all increased after the collision.

---

[1] Dr. Geiger's deposition testimony was read for the jury.

The day after the accident, Dr. Geiger examined Johnson again. At that time, Johnson complained of neck pain that radiated to the left trapezius muscle, elbow pain, mid-back pain, pain in his shoulder joints and sacral base, clicking and popping in his jaw, wrist pain, shoulder pain, sleeplessness, difficulty concentrating, difficulty with memory, difficulty with balance, and forgetfulness. Dr. Geiger's tests supported Johnson's complaints, some of which were new, but some of the conditions, "as far as neck pain, mid back pain, and lower back pain, were the same, except that the pain intensity had increased." Dr. Geiger opined that the exacerbation of old symptoms and the new symptoms, such as jaw issues and neck pain that radiated to the left trapezius muscle, were caused by the latest accident. Dr. Geiger stopped treating Johnson in March 2014.

Johnson also introduced testimony from a chiropractic radiologist, two additional chiropractors, and a neurosurgeon, all of whom examined him at some point after the 2013 accident.

The defense played the video deposition testimony of Dr. Eyster for the jury. Dr. Eyster is a neurosurgeon, and he examined Johnson in August 2017. Dr. Eyster opined there was nothing objective to support any of Johnson's complaints of new or further injury after the accident, though the accident may have caused a cervical strain. A cervical strain is like a pulled muscle; the cervical muscle is attached to the base of the skull.

2. *El'shloyh*

El'shloyh testified that after the accident she had problems with her head, jaw, neck, mid-back, hip, and shoulder. She also had double vision.

The day after the accident, El'shloyh saw Dr. Geiger for the first time since 2009. She complained of occipital pain that radiated to the right side of her face and jaw, mid-back pain, pain in both shoulder joints, clavicular pain, headache, hazy vision, neck pain, a popping sensation in her right hip, numbness or tingling in her right leg, right wrist

4

pain, and popping in her right wrist. El'shloyh also complained that her bite was off, chewing was painful, her balance was off, "her guts and stomach were off, [and] that she had these urges to urinate or defecate." Dr. Geiger indicated his findings supported her complaints. He ultimately opined that even though the collision was low-impact, the forces were enough to have caused her problems: "My opinion was that she had suffered from a low-impact collision; that those forces were enough to cause damage to those ligamentous structures; and that forces in hypertension were bad enough, when she hit the headrest, it caused her [jaw] problems, which were exacerbated by the fact that she had previous injuries and probably weakness in the structures due to the previous injuries." Dr. Geiger did not see El'shloyh after April 2014.

Starting in March 2014, El'shloyh saw the same additional chiropractors that Johnson relied on. They also testified as to their evaluation of El'shloyh. Additionally, a dentist testified he first saw El'shloyh in January 2014 and then not again until 2016. The dentist testified El'shloyh had limited movement in her right jaw joint from a possible dislocation, explaining: "I believe[d] that her pain and her condition were the result of the accident because that's the only thing I have that—from the narrative she gave me, from my interrogation of the patient, and my seeking the truth of the condition of the patient. She never had any such issues before."

When Dr. Eyster examined El'shloyh in September 2017, she complained of neck and jaw pain, headaches, double vision, shoulder pain, incontinence, spinal cord damage, hip pain, right leg, and back pain. Dr. Eyster testified that nothing in his physical examination, El'shloyh's medical records, or diagnostic films supported her complaints. Further, "her exam couldn't have been more normal." Additionally, he did not "know anything that could cause her symptomatology." He explained that when he examined her, there was no evidence of any chronic cervical strain, but it was possible she had a whiplash injury at the time of the accident. However, a cervical strain would not have explained her complaints of incontinence, weakness in the legs, numbness, or imbalance.

A neuropsychologist, Dr. Wicks, also testified for the defense. After reviewing El'shloyh's medical records and conducting psychological tests, Dr. Wicks concluded "there is absolutely no injury, no indication of injury, no follow-up of any injury," and her "psychological testing made absolutely no sense whatsoever" based on its inconsistencies. Further, her responses suggested she "[m]ay not have answered in a completely forthright manner." He concluded El'shloyh had borderline personality disorder and somatic symptom disorder, the latter of which he described as someone who reports a lot of physical symptoms from a lot of areas, but no one can find anything wrong with them. He further emphasized that "[t]he symptoms she claims as a head injury just don't test out. She tested out normally."

C.      *Verdict*

The jury was instructed that defendant "agrees that he was negligent, but denies that the negligence caused [plaintiffs] any harm." Further, the jury was instructed that, to establish their claim, plaintiffs had to prove they were harmed, and that defendant's negligence was a substantial factor in causing the harm. "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [¶] Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." The jury was instructed that to prove something, plaintiffs "need prove only that it is more likely to be true than not true."

The jury returned a special verdict concluding defendant's negligence was not a substantial factor in causing harm to either plaintiff. As this was the first question on the special verdict form, the jury made no findings in plaintiffs' favor.

Plaintiffs moved for a new trial pursuant to Code of Civil Procedure section 657.

The trial court explained that the basis for the motion appeared to be that the evidence was insufficient to support the verdict and/or that the damages were inadequate.

6

The court concluded the motion did not elaborate upon or substantiate any of the other statutory grounds for a new trial under Code of Civil Procedure section 657.

The court denied the motion. With respect to Johnson, the court explained, "The starting point in the evidence here is that the accident was a low-speed, approximately 5 mph rear-end collision that caused very minimal property damage. Well before this accident, Johnson suffered the same symptoms and had many of the same subjective complaints he had after the 2013 accident. The jury reasonably concluded Johnson did not meet his burden of proving his post-accident symptoms and treatment were causally connected to the accident—a conclusion the court shares after consideration of all of the evidence. In short, the evidence does not support that a different result clearly should have been reached by the jury. To the contrary, the jury got it exactly right, and the court's assessment of the evidence yields the same result as the jury."

As to El'shloyh, the trial court stated her "affect and testimony at trial can be fairly characterized as bizarre and incredible. For example, at times, she simply refused to answer questions while testifying, despite court orders to do so. As another example, she claimed to have been part of a human experiment many years ago at UCLA where she was injected with bio-toxins. As a result of this low-speed rear-end collision which caused nearly imperceptible property damage, she claimed an entire galaxy of symptoms, including various physical limitations, emotional injury and head trauma." The court stated, "the jury rightly disbelieved her testimony and claims—and so does the court." The court also found "there was substantial persuasive evidence refuting her various claims."

Plaintiffs filed timely notices of appeal.

## II. DISCUSSION

### A. *Standard of Review*

Where, as here, plaintiffs fail to prove their causes of action, the standard of review on appeal is not, as plaintiffs suggest, whether substantial evidence supports the

7

judgment.  (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)  "We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal.  Under this test, ' "we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment. . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party*, *and disregards the contrary showing*.' [Citation.]  All conflicts, therefore, must be resolved in favor of the respondent." ' [Citation.]

"But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence.  In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment."  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; accord *Estes v. Eaton Corporation* (2020) 51 Cal.App.5th 636, 651.)

Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' "  (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)  "This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing plaintiff to meet, because unless the trier of fact made specific factual findings in favor of the losing plaintiff, we presume the trier of fact concluded that 'plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof.' "  (*Estes v. Eaton Corporation*, *supra*, 51 Cal.App.5th at p. 651.)  "[I]t was the province of the jury to

8

disbelieve any testimony which appeared to them to lack verity.  They were the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." (*Gray v. Southern Pacific Co.* (1944) 23 Cal.2d 632, 641.)  "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence."  (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

Plaintiffs also challenge the trial court's denial of their motion for a new trial. "Where the trial court denies a motion for new trial, it is presumed that the verdict is correct.  [Citation.]  It is not our function to reweigh the evidence.  [Citation.]  The denial of a new trial motion based on insufficiency of the evidence will be reversed only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted."  (*Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 367-368.)

B.      *Questions About Bioweapon Experiment*

1.      *Trial Court Proceedings*

During trial, El'shloyh was questioned about whether she recalled reporting to a professor that she had chest pains and numb hands, and then reported to a police officer that subsequently helped her get to a bus stop that she had a lifelong problem of biotoxic illness.  She replied that she has an immune system impairment, a heart condition, and her problem has not been lifelong.  She was asked whether she recalled "reporting to the officer that [she] had been the subject of a bioweapon experiment conducted by Larry Ford at UCLA Medical Center."  El'shloyh said she could not say, did not have to answer, and did not have an answer.  Finally, she said she did not recall saying that.  She was then asked if she believed she got her biotoxic illness from this experiment.  After El'shloyh continued to respond that she had no answer and did not have to answer, there was a discussion off the record, and then plaintiffs' counsel went on the record to say El'shloyh indicated she has been in a witness protection program under the federal court system, and she was not to reveal certain information.  Counsel objected that asking her

9

about the experiment violated her rights. The court overruled the objection, explaining it had not been provided with relevant authority or any verification of this representation. Thereafter, El'shloyh continued to state that she had no answers to the questions on this subject. At one point, she was asked to describe "the experimentation that [she] contend[ed] [she] underwent resulting in this bioweapon experimentation." The court overruled an objection that the question assumed facts not in evidence, and El'shloyh said she had no answer, but she could describe the symptoms of her illness.

As set forth above, plaintiffs' motion for new trial argued there was insufficient evidence to support the verdict. (See Code Civ. Proc., § 657, subd. (6).) The motion also included the following statements regarding the bioweapon experiment questioning: "Surely the court should have had at least [] an offer of proof of relevance. Counsel objected to the questioning. The questioning should have been disallowed under [E]vidence [C]ode section 352." No further elaboration or citation to authority was provided, and the trial court's ruling did not discuss these claims.

### 2. *Alleged Evidentiary Error*

On appeal, El'shloyh argues the trial court abused its discretion in allowing defendant's counsel to question her about her purported involvement in the bioweapon experiment. She contends the evidence was irrelevant. Alternatively, she contends the evidence should have been excluded under Evidence Code section 352 because its probative value was substantially outweighed by its prejudicial effect, and it confused and misled the jury. However, at the time the questions were asked, El'shloyh did not object based on relevance or Evidence Code section 352. Her objection sounded in a claim of privilege she did not support.

Williams argues El'shloyh forfeited her claims of error. We agree.

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the

10

evidence that was timely made and so stated as to make clear *the specific ground of the objection or motion*." (Evid. Code, § 353, italics added.) "The reason for the rule is clear—failure to identify the specific ground of objection denies the opposing party the opportunity to offer evidence to cure the asserted defect. [Citation.] 'While no particular form of objection is required [citation], the objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility.' " (*People v. Holt* (1997) 15 Cal.4th 619, 666-667.) "A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal." (*People v. Marks* (2003) 31 Cal.4th 197, 228.) Further, the "filing of a motion for a new trial did not revive these claims that had not been preserved by a timely and specific objection." (*People v. Cowan* (2010) 50 Cal.4th 401, 486.)

El'shloyh also contends the trial court abused its discretion when it did not grant a new trial because El'shloyh was questioned on matters that were not in evidence. We cannot conclude this was an abuse of discretion because El'shloyh did not raise this issue in her new trial motion. As we noted, at trial, her counsel did object to a question asking her to describe "the experimentation that [she] contend[ed] [she] underwent resulting in this bioweapon experimentation" on the basis that it assumed facts not in evidence. The authorities she relies upon are inapplicable to this or any other line of questioning related to the bioweapon experiment. (See *People v. Murillo* (2014) 231 Cal.App.4th 448, 450 [cross-examination of witness created the illusion of testimony and thus violated defendant's right of cross-examination]; *Smith v. Covell* (1980) 100 Cal.App.3d 947, 959-960 [counsel asking witness "whether she had been told by a psychiatrist her symptoms were in effect manufactured for various suspect psychological reasons" was hearsay].) El'shloyh was asked about her own statements and experiences related to her

11

prior complaints of injury. To the extent she has not forfeited the issue, El'shloyh has failed to demonstrate any of the trial court's rulings were in error.

C. *The Verdict*

1. *Johnson*

Johnson argues substantial evidence does not support the jury's verdict because the undisputed evidence demonstrated he was injured, and no witness testified he was uninjured by the 2013 accident. These arguments misunderstand his burden of proof. The jury did not make any specific factual findings in favor of plaintiffs, and thus we presume the trier of fact concluded their evidence lacked sufficient weight and credibility to carry their burden of proof. (*Estes v. Eaton Corporation*, *supra*, 51 Cal.App.5th at p. 651.) "[T]he trier of fact is not required to believe the testimony of any witness, even if uncontradicted," and "[w]e have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation*, *supra*, 186 Cal.App.4th at pp. 1487, 1486.)

Johnson also contends Dr. Eyster's testimony does not support the verdict. Again, defendant did not have the burden of proof and our inquiry on appeal is limited to whether *plaintiffs'* "evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) Johnson's criticisms of Dr. Eyster's testimony are unpersuasive. As to whether there was any corresponding objective findings to support Johnson's increased complaints after the most recent accident, Dr. Eyster stated Dr. Geiger "had objective evidence of muscle stiffness and decreased range of motion that increased after the 2013 accident." But when Dr. Eyster examined Johnson in 2017, "his range of motion was totally within normal limits without pain." Dr. Eyster also noted that Dr. McCrory, a chiropractor and medical doctor who examined Johnson in October 2014, discussed "some ligament difference on his examination, what they palpate . . . on the patient." But Dr. McCrory

12

testified he could not apportion any of the injuries he found among Johnson's various accidents. When Dr. Eyster was asked whether he formulated any opinions as to whether Johnson suffered any injuries from the 2013 accident, Dr. Eyster explained that "you take at face value his complaints, which are myriad and multiple. But then you got to go down through it and drill down on the complaints and see if there's any objective findings to support any of those complaints. And what you end up with is no objective findings to support all these symptoms that are almost total body, totally incapacitating. There's got to be something objective to hang your hat on. What's new that's happened? His imaging studies, the same thing was there before the accident. His complaints were the same thing before the accident. He'd been worked up extensively for this numbness and tingling in upper and lower extremities. And the opinion of the prior treaters, well, . . . [h]e could be getting the spinal cord injury from vitamin deficiency. [¶] But there's nothing objective to say that there's anything new. So the only thing left, well, he had a hyperextension injury, and *maybe* he has chronic cervical strain. So you give him that." (Italics added.) Johnson essentially contends that because Dr. Eyster uttered the phrase "So you give him that," the jury erred because it did not. We disagree. Dr. Eyster used the term "hyperextension injury" to describe "whiplash" when the neck is hyperextended. The defense expert on accident reconstruction and biomechanics testified that the headrests would have prevented hyperextension in this type of accident. He also testified there was the potential for a cervical strain, but nothing beyond that would be consistent with the forces he analyzed. Dr. Eyster explained that a cervical strain cannot be detected on an MRI. Muscle spasms are objective evidence, but Johnson did not appear to have any when Dr. Eyster examined him. Additionally, Dr. Eyster later testified there was no objective finding that Johnson suffered any further injury after the accident. He added, "you don't have any objective evidence to support this wealth of symptomatology. He certainly has got symptoms, total body symptomatology. But when you examine him, he's pretty clean. There's just nothing there on physical exam and on radiological

13

studies. There's some degenerative changes that really look unchanged from what they were prior to the accident. So objectively there's nothing to hang your hat on to say this is a new injury, look at this, this wasn't there before." Under these circumstances, it was reasonable for the jury to conclude Johnson had failed to prove by a preponderance of the evidence that the most recent accident was a substantial factor in causing Johnson any harm. (See *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455 ["A jury may conclude that a plaintiff who testifies falsely concerning injuries suffered no injuries"]; *Carruthers v. Cunha* (1955) 133 Cal.App.2d 91, 96 ["In this state of the evidence, the jury could conclude that plaintiff testified falsely concerning his injuries, and could have concluded that he suffered no injury"].) Put differently, though Johnson introduced evidence of injury after the 2013 accident, that evidence was sufficiently contradicted and impeached, and we cannot conclude that it compels a finding in his favor as a matter of law. (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

Johnson also contends the trial court abused its discretion in denying his motion for new trial because "the evidence established that Johnson had been injured by the 2013 accident" and "[t]he verdict was not supported by the evidence." These contentions fail for all the reasons discussed above.

2.      *El'shloyh*

El'shloyh similarly contends substantial evidence does not support the jury's verdict. As we have explained, substantial evidence review does not apply to this appeal. She also contends that, putting aside her own testimony that the trial court specifically found incredible, the undisputed evidence of other witnesses showed she suffered some injury from the collision. The general rule that a trier of fact may entirely reject the testimony of a witness, even if it is uncontracted, is applied equally to expert and lay witnesses. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890.) Thus, the fact that El'shloyh introduced other witnesses to support her claims is not sufficient to render her appeal successful. Again, we must presume the trier of fact concluded plaintiffs'

14

evidence lacked sufficient weight and credibility to carry their burden of proof. (*Estes v. Eaton Corporation*, *supra*, 51 Cal.App.5th at p. 651.) Further, as with Johnson, her testimony and the other witness testimony that supported her claims was contradicted and impeached.

As Johnson did, El'shloyh argues Dr. Eyster stated she could have sustained a cervical strain. For the reasons we have stated above, this point is uncompelling. Dr. Eyster explained that when he examined her, there was no evidence of any chronic cervical strain, but it was possible she had a whiplash injury at the time of the accident. He said, "you would assume that at the time of injury when she was seen by Dr. Geiger that he did find some evidence." Nonetheless, Dr. Eyster stated nothing in El'shloyh's medical records or diagnostic films supported her complaints.

Additionally, El'shloyh argues Dr. Eyster did not provide substantial evidence that she did not sustain a jaw injury caused by the accident. That was neither necessary for the defendant to establish nor a fair characterization of the evidence. Dr. Eyster testified that she made these jaw joint complaints to him and he reviewed her dental records with her other medical records after his examination of her, but he could not substantiate any of her complaints through his examination or her medical records.

El'shloyh argues Dr. Wicks's testimony does not constitute substantial evidence to support a finding that she sustained no physical injury because he was not qualified to opine on whether she suffered a cervical sprain or a jaw injury and, even if he was, he lacked sufficient information on which to base such an opinion. Again, substantial evidence review does not apply to this appeal. The import of Dr. Wicks's testimony was that it was further impeachment of El'shloyh's evidence, and she had the burden of proof. Dr. Wicks testified he was not retained to give an opinion as to physical injury, though he did conclude after a review of her medical records including dental records and the records of one chiropractor, that there was "absolutely no injury, no indication of injury, no follow-up of any injury." To the extent El'shloyh suggests this testimony should have

15

been disallowed, she waived the issue by failing to object in the trial court. (*People v. Bolin* (1998) 18 Cal.4th 297, 321; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 397.) Her complaint on appeal that Dr. Wicks's testimony was insufficient to constitute substantial evidence fails due to her burden of proof.

As with Johnson, El'shloyh's evidence was sufficiently contradicted and impeached, and the evidence as a whole compels neither a finding in favor of El'shloyh as a matter of law on the question of whether the collision was a substantial factor in causing her harm, nor the conclusion that her motion for a new trial should have been granted.

## III. DISPOSITION

The judgment is affirmed. Respondent Jonathan Williams shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

RENNER, J.



We concur:


/S/

HULL, Acting P. J.


/S/

MAURO, J.


16