Filed 11/18/24  P. v. Ornelas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C099667 |
| Plaintiff and Respondent, | (Super. Ct. No. CR2007-5385-3) |
| v. | |
| RUDY JOSEPH ORNELAS, | |
| Defendant and Appellant. | |

In 2010, the trial court sentenced defendant Rudy Joseph Ornelas to 45 years in prison for attempted murder, possession of a firearm by a felon, and assault with a semiautomatic firearm.  That term included 27 years in prison for enhancements based on his prior serious felony conviction, two prior prison terms, and discharging a firearm.  In 2022, the trial court struck the two prior prison term enhancements pursuant to Penal Code[1] section 1172.75 but declined to otherwise alter his sentence.  On appeal, defendant

---

[1]     Undesignated section references are to the Penal Code.

1

argues the trial court erred in (1) failing to state what evidentiary standard it applied in making its decision, (2) finding defendant's expert lacked credibility, and (3) finding defendant was a danger to public safety. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant told his codefendant, Claudio Magobet, that defendant saw Magobet's girlfriend with a third man, A.T., and the girlfriend had Magobet's wallet. Defendant believed A.T. might have defendant's keys. Thus, defendant and Magobet went in search of the girlfriend and A.T. (*People v. Ornelas* (Feb. 14, 2012, C065884) [nonpub. opn.] (*Ornelas*).)

Magobet brought a loaded gun on this quest. During their hunt, defendant asked Magobet if defendant could hold the gun because " 'he would know how to handle the situation.' " (*Ornelas*, *supra*, C065884.)

Magobet and defendant found A.T. in a trailer owned by a fourth man. Magobet and defendant went inside and persuaded A.T. to step outside of the trailer. As soon as they stepped outside, A.T. hit defendant in the back of his head causing defendant to " 'bobbl[e] around' and hit a truck." Before A.T. could hit defendant again, defendant pulled out the gun and shot at A.T. four separate times while A.T. pled for him to stop shooting and ran away. Despite his efforts, defendant missed each time and A.T. got away. (*Ornelas*, *supra*, C065884.)

The defense presented evidence Magobet confessed to the shooting and a neighbor claimed defendant was not present at the scene of the crime. (*Ornelas*, *supra*, C065884.)

The jury found defendant guilty "of attempted murder . . . , possession of a firearm by a felon . . . , and assault with a semiautomatic firearm . . . . The jury found true allegations that defendant intentionally and personally discharged a firearm . . . in the commission of [the attempted murder count] and that he personally used a firearm . . . in the commission of [the assault] . . . .

"In a bifurcated proceeding, the trial court found that defendant had . . . a prior serious felony conviction . . . and had served four prior prison terms . . . .

"[The trial court] sentenced [defendant] to . . . prison for 45 years, consisting of 18 years (double the upper term) for [attempted murder], 20 years for discharge of a firearm, five years for the prior serious felony conviction, and two years for prior prison terms." (*Ornelas*, *supra*, C065884, fn. omitted.)

A separate panel of this court affirmed the judgment. (*Ornelas*, *supra*, C065884.)

In 2022, defendant filed a petition asking the trial court to strike the two prior prison term sentences under section 1172.75. Pursuant to section 1385, subdivision (c), defendant also asked the trial court to dismiss the 20-year firearm enhancement and the five-year prior serious felony conviction enhancement, leaving him with a new sentence of 18 years in prison.

The prosecution agreed the trial court should dismiss the prior prison term enhancements but opposed defendant's application for any additional relief. The prosecution identified circumstances in aggravation factors implicated by the current conviction as including: (1) the crime involved great violence and threat of bodily harm disclosing a high degree of cruelty, viciousness, or callousness; (2) defendant was armed; (3) defendant engaged in planning prior to the shooting; (4) defendant was a danger to society; (5) defendant's prior convictions as an adult and a juvenile are numerous and of increasing seriousness; (6) defendant had served prior prison sentences; and (7) defendant's performance on parole was unsatisfactory.

The prosecution further noted defendant's criminal activities had increased in severity over time. As a juvenile, defendant started out with grand theft, being drunk in public, auto theft, and drug usage but moved on to assaulting a staff member, another theft, and a battery.

Defendant had multiple convictions as an adult. These convictions included domestic violence in 2004 and 2006, discharging a firearm at an inhabited dwelling in

3

1992, being a felon in possession of a firearm and possession of a firearm (federal charges) in 1996, possession of controlled substances in 1996, being a felon in possession of a firearm in 2001, and repeatedly being in violation of a gang injunction in 2006 and 2007.

In addition to his many convictions, defendant exhibited continued criminal behavior while in custody. Between 2011 and 2021, defendant threatened a staff member, refused to attend a medical appointment, engaged in nine incidents of fighting, possessed a controlled substance three times, possessed a hypodermic syringe, disrespected a staff member, and refused to work. Defendant was also an enforcer for the gangs to collect drug debts. Based on this history and the nature of the crime, the prosecution contended the dismissal of the enhancements would endanger public safety.

At the evidentiary hearing on his petition, defendant presented testimony of two witnesses, his physician and a substance abuse counselor.

Defendant's physician, Dr. Barbara Smith, testified that she saw defendant once a month between June of 2020 and September of 2022 and that the appointments lasted 20 to 30 minutes during the last year. She testified it was her opinion defendant deserved to have his sentence reassessed because she had seen long-term positive changes in those prior two years.

The certified substance abuse counselor, Jennifer Kane, testified she was a former drug addict, has four prior felony convictions for check fraud, robbery, murder, and an arming allegation. She had 315 hours of educational training, performed 3,000 hours of work experience, and passed the alcohol and drug counselor written exam.

Over the prosecution's objection Ms. Kane was not qualified to give a mental health diagnosis, the trial court found Ms. Kane an expert but alerted the parties the prosecution's objections went to the weight of the expert's testimony not its admissibility.

4

Ms. Kane testified she reviewed defendant's criminal history, the probation report, and his prison writeups. She also interviewed defendant for about an hour. She reviewed 200 pages of material she received from defendant but did not review the 5,000 pages of defendant's nonconfidential central prison file she received.

Ms. Kane expressed the opinion that most of the disciplinary actions defendant received in prison were due to drug abuse and motivated by drugs. Ms. Kane testified she believed defendant had a substance abuse disorder and was a drug addict for the bulk of his adult life. Ms. Kane testified that she felt if defendant continued his commitment to sobriety and therapy, he could be safely released.

Defendant told the trial court he was sorry for the mess he made of his life and asserted he had a rough childhood, got involved in drugs and gangs, and his addiction pushed him to prison.

At the conclusion of the evidentiary presentation, the trial court stated, "As for the [expert] testimony in general, I did find it helpful, but I didn't find it particularly credible as to the fundamental question here as to whether the [c]ourt should resentence . . . defendant pursuant to the statutes that are -- that are noted here." The trial court continued, "[T]he [c]ourt does find that . . . defendant does have a significant criminal history. This was a very serious and violent crime with the aggravating factors, significant aggravating factors under the [California] Rules of Court that are correctly, I think, noted by the [prosecution] in [its] brief and in [its] argument here, and that criminal activity did and behavior did continue into -- into prison." The trial court quoted from defendant's brief, " 'The fundamental argument being that [defendant] has shown significant growth over the last three years and appears to have turned the corner in his behavior and addiction.' . . . [¶] [I] don't fully endorse that, but it is clear from the record that he has shown significant growth over the last few years, . . . nonetheless, I don't think that outweighs the other factors that the [c]ourt has just noted. [¶] And more fundamentally, the [c]ourt does agree that although the [c]ourt is supposed to look at

5

these different factors in [section] 1385[, subdivision] (c) and, you know, weigh those circumstances -- the presence of those circumstances and, you know, if they're present, that they're weighed in favor of dismissing the enhancement, that is, as I think the [prosecution] correctly point[s] out, that the [c]ourt . . . would do so unless the [c]ourt finds that the dismissal of the enhancements would endanger public safety.  [¶]  And I think for the reasons that the evidence shows and for the reasons argued by the [prosecution] and as stated by the [c]ourt, I do think that dismissal of those enhancements would endanger public safety, and the [c]ourt does determine that the sentence was appropriate based upon the determination of the jury in the fundamental trial."

Defendant appeals.

## DISCUSSION

### I

*Defendant Forfeited His Claim The Trial Court Erred By*
*Failing To Disclose The Standard It Used When Resentencing Him*

Defendant argues the trial court erred by failing to disclose the evidentiary standard it used in rejecting defendant's application for resentencing and how it applied the relevant criteria.  The People respond defendant forfeited this argument by not raising it in the trial court.  We agree with the People.

"[T]he right to challenge a criminal sentence on appeal is not unrestricted.  In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have required parties to raise certain issues at the time of sentencing.  In such cases, lack of a timely and meaningful objection forfeits or waives the claim.  [Citations.]  These principles are invoked as a matter of policy to ensure the fair and orderly administration of justice."  (*People v. Scott* (1994) 9 Cal.4th 331, 351, italics omitted.)

We reject defendant's counterargument that this issue was not forfeited because counsel could not be expected to interrupt the trial court during its ruling.  It would have

6

been entirely proper to raise this issue at the conclusion of the trial court's ruling while all were still present. At that time, the trial court could have identified if it made an error and corrected it. We expect no more and no less of counsel in a sentencing proceeding. This argument is forfeited.

II

*The Trial Court Was Not Required To Accept Defendant's Expert As Credible*

Defendant further argues the trial court erred in finding Ms. Kane to be a substance abuse expert but then finding she was not credible when she expressed the opinion defendant could be treated safely in the community. We reject defendant's framing of this issue and his argument.

The People argue defendant forfeited this point by not raising it in the trial court. We decline to find forfeiture on this point as defendant's case rested on the presentation of this witness and the trial court overruled the prosecution's objections to the testimony several times. Further, the prosecution expressly challenged the credibility of this witness in its arguments. Defendant responded by arguing this witness was qualified. This placed this issue squarely before the trial court, and we conclude the issue is not forfeited.

While defendant attempts to frame the argument differently, the essence of defendant's argument is that the trial court was required to accept the testimony of his expert witness. We disagree.

A qualified expert witness may give opinions on matters in controversy and the matters upon which the expert witness's opinion is based. (Evid. Code, §§ 801, 720.) "So long as it does not do so arbitrarily, a jury [or fact finder] may entirely reject the testimony of [an] expert, even where the [opposing party] does not call any opposing expert and the expert testimony is not contradicted. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633.) "[T]he opinion of any expert witness 'is only as good as the facts and reasons on which it is based. . . .' [Citation.] If the jury [or fact finder] finds

7

that the party offering expert testimony has failed to prove any foundational fact, or that some fact on which the expert's opinion is based has been disproved by the opposing party, the jury [or fact finder] is required to consider that in evaluating the expert testimony. Although a jury [or fact finder] may not arbitrarily or unreasonably disregard the testimony of an expert, it is not bound by the expert's opinion. Instead, it must give to each opinion the weight [that] it finds that opinion deserves." (*Ibid.*) "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

Here, the expert's testimony was based upon her partial file review and a one-hour interview with defendant. The ultimate opinion was if defendant continued his commitment to sobriety and therapy, he could be safely released, and that the expert witness had a recommended treatment plan for defendant.

Defendant's criminal and prison records and indeed his own admission on the record presented the trial court with a cornucopia of evidence establishing a long history of drug addiction and his corresponding actions demonstrating it was likely defendant would not continue his commitment to sobriety and therapy. Further, the expert's limited review and her own past felony convictions gave the trial court independent reasons to question the value of this opinion. We conclude the trial court did not act arbitrarily in finding this opinion unhelpful on the question of whether dismissing the enhancements would endanger public safety.

8

## III

*The Trial Court Did Not Abuse Its Discretion When*

*Failing to Dismiss Certain Enhancements*

Defendant argues the trial court erred in finding dismissing the enhancement would endanger public safety. The trial court did not abuse its discretion.

Effective January 1, 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728, § 3) added section 1172.75 (former § 1171.1; Stats. 2022, ch. 58, § 12) to the Penal Code, providing: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, . . . is legally invalid." (§ 1172.75, subd. (a).) The statute further provides that, at resentencing, the trial court shall "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

Also, effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to add subdivision (c), which provides in relevant part that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) Subdivision (c)(2) further provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

As noted *infra*, defendant alleged several of the mitigating factors enumerated in section 1385, subdivision (c)(2) are present here. (§ 1385, subd. (c)(2)(B), (C), (D), (E), (H).) But defendant also recognized that before the trial court could consider these

9

factors, it had to find dismissing the enhancement would not endanger public safety. (§§ 1172.75, subd. (d)(1); 1385, subd. (c)(2).)  The trial court found that a dismissal would endanger public safety.

We review the trial court's refusal to dismiss an enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374.)  An abuse of discretion may occur where the trial court is not aware of its discretion, considers impermissible factors, fails to consider relevant factors; or where the decision is so irrational or arbitrary, no reasonable person could agree with it.  (*Id*. at pp. 377, 378.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, the trial court was faced with a defendant who attempted to murder a person who might have had his keys by shooting at him four times.  It is only by happenstance and his poor aim that he is not a murderer.  There are multiple aggravating circumstances associated with this crime:  (1) It involved great violence and threat of bodily harm disclosing a high degree of cruelty, viciousness, or callousness; (2) defendant was armed; (3) defendant engaged in planning; and (4) defendant is a danger to society.  (Cal. Rules of Court, rule 4.421(a)(1), (2), (8) & (b)(1).)

Further defendant's prior convictions as a juvenile and as an adult are numerous and of increasing seriousness.  (Cal. Rules of Court, rule 4.421(b)(2).)  In addition, defendant served prior prison sentences and defendant's performance on parole was unsatisfactory.  (Cal. Rules of Court, rule 4.421(b)(5).)  As a juvenile, defendant started out with a property crime and graduated to the violent crime of battery.  From there, defendant's adult record expanded his violent behavior to include domestic violence, possession of firearms and controlled substances, and repeatedly violating a gang injunction.  In prison, he threatened a staff member, fought prolifically, and possessed controlled substances and drug paraphernalia.

We conclude the trial court's finding the dismissal of the enhancements, which would have resulted in defendant's release from prison soon (he had served 14 years of the sentence he requested to be reduced to 18 years), would endanger society is not irrational or arbitrary. The trial court understood its discretion and considered the relevant factors, and we conclude this finding is not so irrational or arbitrary that no reasonable person could agree with it.

### DISPOSITION

The judgment is affirmed.

/s/
ROBIE, J.

We concur:

/s/
EARL, P. J.

/s/
MAURO, J.