Filed 2/20/25  Mazyck v. Toyota Motors Sales CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CASSANDRA ANN MAZYCK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC.,<br><br>    Defendant and Respondent. | D082633<br><br><br>(Super. Ct. No. 37-2018-00054748-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kevin A. Enright, Judge.  Affirmed.

Auto Fraud Legal Center, Christopher P. Barry and Michelle A. Cook, for Plaintiff and Appellant.

Horvitz & Levy, John A. Taylor, Jr., Jason R. Litt, Rebecca G. Powell; Nelson Mullins Riley & Scarborough, Jahmy S. Graham, Priscilla Szeto; Beatty & Myers, Sean D. Beatty, John W. Myers IV, and Kriston J. Guillot for Defendant and Respondent.

In this appeal, Cassandra Ann Mazyck challenges the L/Certified program by Lexus, a division of Toyota Motor Sales, U.S.A., Inc., based on a certified pre-owned vehicle she bought.  She argues damage to the rear body

panel component of her vehicle precluded it from being certified under either (1) L/Certified standards or (2) a section of the Vehicle Code that prohibits using the term "certified" in a misleading manner. Substantial evidence, however, supports the trial court's findings to the contrary. Mazyck also asserts the rear body panel must have been damaged in an accident before she bought the vehicle, contrary to the dealer's representation it was accident-free. But the court found Mazyck failed to meet her burden of proof, which raises a high bar for her to overcome on appeal. Mazyck again falls short, as she has not identified evidence on this point that compels a finding in her favor as a matter of law.

Alternatively, Mazyck seeks reversal based on purported errors in admitting evidence, including testimony from a Toyota witness and a structural diagram of her vehicle. Yet despite acknowledging only prejudicial errors require reversal, Mazyck leaves out any meaningful discussion of prejudice from her opening brief. By holding back on that discussion until her reply brief, she forfeited the point. Absent a showing of prejudice, reversal is unwarranted.

Because these conclusions are fatal to an element of each of Mazyck's causes of action, we affirm the judgment without reaching her remaining arguments.

## I.

We focus on the facts necessary to decide this appeal.

## A.

In March 2017, Mazyck went to a Lexus dealer to buy an L/Certified pre-owned Lexus LS 460 sedan. She wanted to buy a certified vehicle because it cost less than a new one and she had seen television commercials advertising L/Certified vehicles as "like new." She testified advertising

2

touted the L/Certified program as giving owners "peace of mind" that the vehicle was inspected, "met [Toyota's] standards," and was of good "quality."

Mazyck was offered a vehicle in the model she wanted that was currently being reconditioned to be certified under the L/Certified program. While her son test drove the vehicle, Mazyck rode in the back and described the ride as "smooth." The vehicle did not pull to the right during the test drive. In response to her question, Mazyck was told the vehicle had not been in an accident. She received a vehicle history report from a third-party company noting "[n]o accidents or damage reported."

Mazyck bought the L/Certified vehicle from the dealer.

Over the next year, Mazyck brought her vehicle back to the dealer multiple times to repair various complaints, most persistently that the vehicle was "pulling to the right." A repair order from nine months after Mazyck's purchase noted "customer damage to trunk paint and rear view camera is off."

In response to the issues with her vehicle, Mazyck sued Toyota and other defendants under the Consumers Legal Remedies Act, Song-Beverly Consumer Warranty Act, and Unfair Competition Law, alleging her vehicle "had structural damage and should not have been advertised or sold as an L/Certified vehicle." By time of trial, Toyota was the sole remaining defendant.

### B.

At a bench trial, the parties presented evidence related to the rear body panel and the vehicle's accident history.

Experts from both sides agreed the rear body panel showed damage by the time of the inspection in October 2019. Even so, Toyota's expert testified the rear body panel of Mazyck's vehicle is "not high-strength steel and thus

3

[is a] cosmetic structure." In his opinion, a cosmetic structure like the rear body panel "is not relevant for crash tests. It's not relevant for vehicle collisions." Such parts are thus "not relevant to crashworthiness," which refers to structural parts of a vehicle.

The Vehicle Preparation Guide details the standards for L/Certified pre-owned vehicles. Relevant here, the Guide states that "[a]ny indication that there is/was unibody damage or any sign of structural repairs will automatically exclude the vehicle from the program." Testimony from both sides explained the term "unibody" refers to a vehicle with the frame and body components welded together, as opposed to one with a separate frame. The Guide defines structural components as "the major load-bearing and/or passenger-protecting structural components in the vehicle" and lists specific unibody components that meet this definition of "structural." The list does not include the rear body panel. The Guide explains that while the rear body panel is "welded to the structure and do[es] play a part in vehicle structural integrity and crash protection," it is "primarily cosmetic." As a result, the rear body panel is "classified as non-structural for the purpose of certification."

As for vehicle history, at trial, Mazyck admitted she got into one accident a couple of years after purchasing her vehicle but before her expert inspected it. She explained that another driver "tapped" the "back quarter panel" of her vehicle. She denied any impact to the rear of her vehicle. Although she was the vehicle's primary driver, Mazyck left her vehicle with a friend for about four days while she was out of town.

## C.

In the end, the court issued a statement of decision and found Mazyck "failed to meet her burden of proof on all claims."

4

Relevant here, the court found the rear body panel "not structural," so its damage "would not have disqualified the Vehicle from being certified" under the L/Certified program. The court found Toyota's expert credible and viewed the Guide as focusing on components related to the "safety and crashworthiness of the vehicles being inspected."

Although Mazyck requested a statement of decision on 40 itemized issues, including whether her vehicle was involved in an accident before her March 2017 purchase, the court declined to do so because many requests did not go to "ultimate or relevant issues" or "ask[ed] for factual findings on issues [Mazyck] either did not raise at trial or failed to prove."

## II.

As an initial matter, we deny the parties' joint request to consolidate this appeal with Mazyck's pending appeal from the order on her motion to tax costs. We reiterate, however, that the same panel will consider the pending appeal.

## III.

Moving to the merits, Mazyck challenges numerous factual findings, evidentiary rulings, and the court's reasons for not imposing injunctive relief. She also seeks a different judicial officer to oversee any remanded proceedings. Because we conclude Mazyck falls short of an element of each of her causes of action, we can resolve this appeal without addressing the factual findings going to other elements, denial of injunctive relief and a related evidentiary ruling, or disqualification of the trial judge. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259.)

We address Toyota's forfeiture argument before delving into the element fatal to Mazyck's causes of action.

5

A.

Toyota argues Mazyck "forfeited her challenge to the judgment" by "repeatedly omit[ting] key material evidence that supports the trial court's findings." The only specific example Toyota cites, however, does not stand up to scrutiny. Although Toyota accuses Mazyck of omitting a post-sale repair order noting "customer damage to trunk paint," that repair order is included in Mazyck's appendix.

We note later in this opinion where Mazyck has forfeited certain arguments, but we otherwise exercise our discretion to consider her appeal. In addition, while we have considered all adequately developed arguments Mazyck separately identified under an appropriate heading in her opening brief needed to resolve this appeal, to the extent she has asserted additional arguments we have not addressed, they are forfeited. (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

B.

When reviewing a bench trial judgment, we consider questions of law de novo and factual findings for substantial evidence. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

We generally presume the correctness of the trial court's judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) For factual findings, our "power begins and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) We view the evidence in the light most favorable to the prevailing party and resolve any evidentiary conflicts and draw all reasonable inferences in support of the judgment. (*Ibid.*) As a result, parties challenging a trial

6

court's factual determinations bear an "enormous burden." (*Ibid.* [cleaned up].)

As noted above, Mazyck sued Toyota under the CLRA, Song-Beverly Act, and UCL. Under the CLRA, Mazyck contends Toyota misrepresented her vehicle's certification, characteristics, and standard. (Civ. Code, § 1770, subds. (a)(2), (5), (7).) Under the Song-Beverly Act, Mazyck argues her vehicle's L/Certified label was inaccurate. (Civ. Code, § 1791.1, subds. (a)(3)-(4).) Under the UCL, Mazyck claims Toyota engaged in unlawful, unfair, and fraudulent conduct. (Bus. & Prof. Code, § 17200.)

In this appeal, the foundation for each of Mazyck's causes of action is that Toyota purportedly misrepresented the quality of her vehicle because her vehicle (1) had damage to the rear body panel that rendered it ineligible for certification under Toyota's L/Certified standards; (2) could not be lawfully sold as "certified" under Vehicle Code section 11713.18, subdivision (a)(9); and (3) had previously been involved in an accident, contrary to what the dealer told her. Mazyck, however, falls short of her appellate burden to overcome the trial court's factual findings to the contrary, which dooms her causes of action.

We address each factual assertion in turn.

1.

First, Mazyck challenges the court's finding that damage to the rear body panel of her vehicle would not disqualify it from being L/Certified under Toyota's standards. The evidence, however, supports it.

Mazyck misapprehends the standard of review when she claims that, because Toyota "declined to address" this factual finding, "it is undisputed that the trial court erred in failing to find . . . vehicles with unrepaired damage to the rear body panel are ineligible for certification under

7

L/Certified standards." Toyota's response, or lack of one, does not alter Mazyck's burden to overcome standard appellate presumptions and to affirmatively show error. We still liberally construe the facts to support the judgment and draw all reasonable inferences in support of the court's findings. (*Thompson*, 6 Cal.App.5th at p. 981.)

Substantial evidence supports the court's finding that the rear body panel is "not structural," so any damage to it "would not have disqualified" Mazyck's vehicle from being certified under the L/Certified program. Support comes directly from the Guide outlining the L/Certified standards, which classifies the rear body panel as "primarily cosmetic" and "non-structural for the purpose of certification."

The lone evidence Mazyck cites in opposition at best conflicts with the Guide, making it irrelevant under our deferential standard of review. Mazyck points to testimony from a Toyota engineer—the same witness whose testimony she argues was improperly admitted—who purportedly "testified vehicles with unrepaired damage to the rear body panel do not meet L/Certified standards." Mazyck leaves out that the witness was discussing appearance standards, not safety standards. To the extent this testimony contradicts the Guide, it does not win the day for Mazyck because "we completely disregard contrary evidence." (*Schmidt*, 44 Cal.App.5th at p. 581.) To the extent it does not contradict the Guide because it addresses the appearance rather than safety aspect of certification, we can draw other reasonable inferences in support of the judgment. The factfinder might have disregarded this evidence because the engineer was answering questions about a document issued three and one-half years *after* Mazyck's purchase. In addition, the factfinder could have given less weight to the engineer's testimony about "[i]f any visible evidence of exterior sheet metal or paint

8

repair doesn't meet Lexus certified appearance standards" when the witness was not presented with the details of those appearance standards. Nor did Mazyck point us to those appearance standards details on appeal. Either way, that testimony is insufficient to undermine the court's factual finding.

## 2.

Second, Mazyck contends her vehicle could not lawfully be sold as "certified," even if it met Toyota's L/Certified standards, because it was misleading under Vehicle Code section 11713.18(a)(9).[1] We disagree.

Vehicle Code section 11713.18(a)(9) prohibits using the term "certified" in any way that is "untrue or misleading." (Veh. Code, § 11713.18(a)(9).) The court found Toyota did not violate this subsection.

Mazyck argues the L/Certified program is misleading because it will certify a vehicle "with damage to unibody components that affect structural integrity and crash protection"—the rear body panel—despite touting L/Certified vehicles as "like new," "meticulously inspected," and "superior in quality and safety over uncertified used cars." While she also takes aim at the adequacy of the L/Certified technicians' training in her reply brief, her challenge under section 11713.18(a)(9) depends on her claim the damaged rear body panel "undisputedly" affects structural integrity and crash protection. (Italics omitted.)

Toyota counters by noting Mazyck "failed to prove there *was* any undetected rear body panel damage at the time she purchased it in March 2017," but even assuming such pre-sale damage, substantial evidence supports the court's conclusion that Toyota did not describe Mazyck's

---

[1] Mazyck originally contended the court also erred by finding no violation of Vehicle Code section 11713.18(a)(6) because she did not receive a copy of the completed inspection report before sale. She expressly waived that claim, however, in her reply brief.

9

L/Certified vehicle in an untrue or misleading manner. The court found "[n]ot all unibody components are structural in a crashworthiness sense." This finding is consistent with Toyota's expert's testimony, and "[a] single witness's testimony may constitute substantial evidence to support a finding." (*Thompson*, 6 Cal.App.5th at p. 981.) Toyota's expert opined the rear body panel of Mazyck's vehicle is cosmetic, and thus it is "not relevant to crashworthiness." The court credited Toyota's expert's testimony about how certain components, including the rear body panel, "play no meaningful role in structural integrity or crash protection and will not impact a crash test in any significant way." This substantial evidence supports the finding that the damage to the rear body panel, even if present before Mazyck bought her vehicle, did not affect structural integrity or crash protection as she claims.

Again, contrary evidence Mazyck points to in the Guide makes no difference under our standard of review. (*Schmidt*, 44 Cal.App.5th at p. 582.) In the face of Toyota's expert's testimony, which the court found credible, Mazyck's claim under section 11713.18(a)(9) cannot stand.

3.

Third, Mazyck asserts her vehicle's rear body panel was damaged in an accident before she bought it. Mazyck was told the vehicle had not been in an accident, which she testified would have been a dealbreaker for her.

Mazyck requested a statement of decision on whether her vehicle was involved in an accident before her March 2017 purchase. Because the court did not make an express finding on that point, she seeks to disable the doctrine of implied findings through Code of Civil Procedure section 634. Under section 634, if a party notifies the court of an unresolved or ambiguous resolution of a controverted issue and the final statement of decision does not rectify it, we will not infer the trial court decided in favor of the prevailing

10

party on that issue. (Code Civ. Proc., § 634.) But as Mazyck acknowledges, the court "is not required to respond point by point to the issues" in a party's request so long as the statement of decision "fairly discloses" the court's decision on the "ultimate facts and material issues in the case." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380.) Such is the case here.

Here, the court expressly found Mazyck "failed to meet her burden of proof on all claims" and "d[id] not find that [Toyota] made any misrepresentations." As a result, it does not matter that the court made "no express finding" the "damage to the rear body panel occurred post-sale." What matters is the court found Mazyck fell short of proving her vehicle was in an accident pre-sale.

Given the court's conclusion, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 [cleaned up].) Instead, in such situations we ask "whether the evidence compels a finding in favor of the appellant as a matter of law." (*Id.* at p. 466 [cleaned up].) "Specifically, the question becomes whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." (*Ibid.* [cleaned up].)

Mazyck does not satisfy this high burden. Mazyck concedes her expert "did not opine as to the timing of the rear-end impact" that purportedly caused the damage to the rear body panel, and he was unaware of her vehicle's history. Thus, the only evidence Mazyck offers as to the timing is her own testimony, in which she admits her vehicle was involved in at least

one accident since she bought it but denies the accident had "any impacts to the rear end" of the vehicle. The factfinder, however, "is not required to believe the testimony of any witness, even if uncontradicted." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486-1487.) And the inference Mazyck draws—that because she did not get into a rear-impact accident, one must have occurred pre-sale—is contradicted by the vehicle history document she received from the dealer noting no reported accidents or damage. In addition, it is not of such a character and weight as to leave no room for a contrary finding, particularly when (1) she left the vehicle in a friend's possession while out of town and (2) a post-sale repair order noted "customer damage to trunk paint and rear view camera is off." In sum, we cannot say the evidence compels a finding in Mazyck's favor.

As a result, we need not address Toyota's responsive argument about the timing of the damage to the rear body panel.

\*　　　\*　　　\*

Without any proven misrepresentation by Toyota, the foundation supporting each of Mazyck's causes of action crumbles.

Because failure to prove one element dooms the entire claim, our conclusions above obviate the need to address Mazyck's numerous challenges to the lack of injunctive relief and other findings, including whether (1) Toyota is the principal of the L/Certified program; (2) Toyota and its dealers market the L/Certified designation as indicative of superiority over uncertified used Lexus vehicles; (3) the damage to the rear body panel went unnoticed because L/Certified inspections are purportedly "more cursory" than advertised; (4) Toyota represented, through an agent, that the vehicle

12

met L/Certified standards and was accident free; and (5) Mazyck relied on the representations.

C.

Alternatively, Mazyck seeks reversal by arguing the court erred in admitting three categories of evidence. We review the admission of evidence for abuse of discretion. (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885.)

For two categories of evidence—(1) testimony by Robert Landis, a longtime Toyota engineer, and (2) a structural diagram of Mazyck's vehicle model—Mazyck fails to show in her opening brief how their admission, even if erroneous, was prejudicial.

We limit our discussion to the question of prejudice because we will not reverse a judgment due to evidentiary error unless it resulted in a miscarriage of justice. (Evid. Code, § 353.) No miscarriage of justice exists unless it is reasonably probable the appellant would have obtained a more favorable result absent the error. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) "[T]he appellant bears the duty of spelling out in [appellant's] brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Mazyck broadly contends the purported evidentiary errors "resulted in judgment in favor of" Toyota. But she forfeited this claim of prejudice "by failing to elaborate [her] argument in meaningful detail in [her] opening brief." (*Pollock v. Kelso* (2025) 107 Cal.App.5th 1190, 1196.) For example, she argues only that the court "accorded at least some weight to Landis's testimony" in the statement of decision without explaining how it affected the judgment. Similarly, Mazyck claims the court "relied on" the structural diagram "in identifying the vehicle's structural components"—although we

13

observe the statement of decision never references the diagram—yet she fails to show how its exclusion would have made any difference in the outcome. While Mazyck goes into more detail in her reply brief, that "approach, were we to indulge it, would not give [Toyota] reasonable notice of the thrust [it] must parry." (*Pollock,* 107 Cal.App.5th at p. 1196.)  Mazyck thus forfeited this point.

Without a showing of prejudice, we will not reverse based on these purported evidentiary issues.

Because Mazyck failed to carry her burden that the trial court erred in ruling against her on the merits, we need not address the third category of purported evidentiary error that goes to the remedy—the terms of Mazyck's settlement agreement with other parties and an earlier attorney fees award.

### D.

Because we affirm the judgment, we need not address Mazyck's request to assign a different judicial officer to oversee remanded proceedings.

### IV.

We affirm the judgment.  Toyota is entitled to its appellate costs.



                                                              CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.


14